**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Patricia Grenier

    v.                                    Civil No. 12-cv-325-LM
                                           Opinion No. 2014 DNH 154
Key Floral, Inc.


<u>**O R D E R**</u>

Patricia Grenier has sued her former employer, Key Floral,
Inc., in three counts, asserting claims for discrimination and
retaliation under the Age Discrimination in Employment Act
("ADEA"), 42 U.S.C. §§ 621-634.  Before the court is defendant's
motion for summary judgment.  Plaintiff objects.  For the
reasons that follow, defendant's motion for summary judgment is
denied.

**Summary Judgment Standard**

"Summary judgment is appropriate when there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d
310, 319 (1st Cir. 2014) (quoting Cortés-Rivera v. Dept. of
Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ.
P. 56(a).  When ruling on a motion for summary judgment, the
court must "view[] the entire record 'in the light most
hospitable to the party opposing summary judgment, indulging all

reasonable inferences in that party's favor.'" Winslow v. Aroostook Cty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)). That is, "the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

**Background**

Key Floral provides flowers for sale in retail stores, primarily Hannaford supermarkets.  In June of 1998, Key Floral's president, Luis Chaves, hired Grenier as a floral technician. Floral technicians manage floral displays in individual locations.  When Chaves hired Grenier, she was approximately 55 years old.

In September of 2008, Grenier began working as the floral technician for two Key Floral locations, one in Pelham and one in Hudson.  In October of 2009, Grenier asked to work at only one location.  Key Floral granted her request, and from October of 2009 through March 6, 2010, she worked at the Hudson location, logging approximately 20 hours per week.

For each of its locations, Key Floral budgets the number of hours it should take a floral technician to perform his or her duties.  In Hudson, Grenier exceeded her budgeted hours every week from November of 2008 through February of 2009.  Over the last four or five weeks that Grenier worked in Hudson, a supervisor told her that she needed to reduce the number of hours she worked.  Other Key Floral management personnel, including Chaves, also spoke with Grenier about keeping her hours down.

On March 6, Chaves met with Grenier and informed her that she was being moved from Hudson to Nashua, where she was to work as a helper to Lori Andrews, who was the floral technician at that location.  She was to receive the same rate of pay, but work about half the number of hours she had worked in Hudson. Chaves explained that her assignment to work as a helper was based upon her inability to perform her duties in Hudson in the budgeted number of hours.  Grenier has testified that at the March 6 meeting, Chaves asked her how old she was.  Chaves does not recall doing so.  It is undisputed that Chaves commented that "we all slow down as we get older," and also opined that another Key Floral employee who was older than Grenier needed to slow down.

After she was informed of her reassignment, Grenier went to Nashua to speak with Andrews.  It is undisputed that Grenier: (1) told Andrews she felt that Chaves should not have asked her how old she was, and that she felt she was being discriminated against because of her age, see Def.'s Mem. of Law, Ex. 1, Grenier Dep. (doc. no. 10-2) 56:5-7, June 4, 2013; and (2) mentioned Chaves's comments about the Key Floral employee who Chaves said needed to slow down because of his age, see id. at 57:7-9.  The circumstances under which Grenier's conversation with Andrews took place are subject to a modest dispute.  Key

Floral says it took place in front of Hannaford employees;
Grenier says that any Hannaford employees who may have been
physically present for the conversation were out of earshot.  In
any event, after the conversation, Key Floral's Director of
Business Development, Judy Sousa, called Grenier to caution her
about talking about Key Floral business in front of Hannaford
employees.  Sousa did not take any disciplinary action against
Grenier based upon her conversation with Andrews.

The record includes a memorandum, dated March 20, 2010, in
which Sousa wrote the following:

> Lori Andrews had called me to inform me that Pat
> G had be[en] speaking to her + to Hannaford employees
> about her meeting w/Lou [Chaves] + the outcome of that
> meeting.
>
> I had a follow up letter to that meeting for Pat
> to read + sign for her employee records.  I felt that
> it was better for her to come to the office to sign +
> also clear up any issues that she had with myself or
> Lou at that time.  . . .
>
> Lou + I sat down with her + went over again that
> she was being placed in Nashua w/Lori Andrews 2 days a
> week Tuesday + Thursday w/10-12 hours per week.
>
> Pat was still upset at the outcome of the
> previous meeting.  . . .  She also stated that she did
> no[t] like some of the things Lou said to her after
> her 10 plus years of employment w/Key Floral.

Pl.'s Mem. of Law, Ex. 12 (doc. no. 32-13), at 1-2.

On April 1, Grenier reported to work at the Nashua
location.  There, she found a large shipment of flowers that had

not yet been processed.  After searching part of the shipment for its invoice, with no success, and after trying to track down Andrews, also without success, Grenier went into a workroom used by Key Floral personnel.  There, next to her own work bag, she saw a tote bag that Andrews used to carry work-related materials.  Given her understanding that Key Floral personnel had been directed to leave personal bags in their cars, or put them in lockers provided by Hannaford, Grenier believed that the tote bag next to hers was also a work bag.

Sticking out of the top of that bag, Grenier saw a manila envelope or folder containing a particular piece of Key Floral paperwork that typically accompanied invoices.  In search of the invoice, Grenier removed the folder from Andrews's bag and began perusing its contents, which she has described as a single sheet of paper.  As Grenier was doing so, Andrews walked into the room.

Later that day, Andrews called Sousa "to complain[] that Ms. Grenier had gone through her personal handbag."  Def.'s Mem. of Law, Ex. 2, Sousa Aff. (doc. no. 10-3) ¶ 5.  At Sousa's request, Andrews prepared a statement that included the following:

> Upon entering my [work] area I saw Pat [Grenier]
> looking through my paperwork folder.  She had it in
> her hand and was shuffling thru the paperwork inside.
> I was on confer[e]nce call still and all I could say

in response was "What?"  I was still trying to compute
what I was seeing.  She said "Oh good morning Lori[],
I was looking for the invoice."  I told her "it was
with the shipment."  It's always with the shipment.
I've never put the invoice in my personal purse in the
last 7 years I've worked for Key Floral!!!  I don't
know of any reason she wouldn't look with the
shipment, look on my clipboard or ask Jim Malloy where
it was.  Pat has been here on a Thurs for the past 3
or 4 weeks[s].  She knows I'm upstairs on conference
call @ 8:30.  I check in the delivery after that and
during conference call time she usually changes water
in cut racks, works on re-works, or waters plants.
I've never had an issue with my purse and people going
thru it.  I keep it on the floor and I usually have my
watering tank in front of it, blocking it from sight.
In that folder she was rifling thru I have all my
personal paperwork I carry in my purse.  My pay stub I
received at the office when I was there on Wed., tax
paperwork, a bank statement, coupons, etc., my
personal documents!!!  For my eyes only.  I felt very
shocked and violated.

Def.'s Mem. of Law, Ex. 2, Attach. C (doc. no. 10-6), at 1-2

(emphasis in the original).

On April 2, Chaves met with Grenier to discuss the incident

involving Andrews's bag.  At that meeting, Grenier admitted to

taking a manila folder out of the bag, but denied rummaging

through it to find the folder.  In her deposition, she describes

part of the meeting this way:

And anyway, I tried to explain, and he kept saying did
you put your hand in her bag?  And I said I put my
hand on the manila envelope which said April 2010
calendar.  Yes, I did bend down and pulled it out.
But he's saying rummaging through her purse.  I said .
. . no, I didn't rummage through anything.  I didn't
look at anything.  I just wanted to find the invoice.
I saw something that was supposed to be with the
invoice.  I didn't know she [Andrews] picked it [the

calendar] up at the office.  I saw it and I looked at
it, and there was no invoice in it, and I put it – she
saw me have it.  I told him she saw me open it and I
put it back in her presence.

      And he . . . asked me if I wanted anybody looking
in my personal belongings, and I said no.  I said but
– but – but on.  No buts.  No buts.  That's it.
You're done.  And I'm going but Lou, Lou, can I talk
to you privately?  No.  You're done.  I said Lou,
almost in tears, I said do you know what day this is?
And he said yeah.  Yeah.  Delivery day, Friday.  Day
after delivery day.  He says I got deliveries to work
on.  That's what he said.  I got deliveries to work
on.  Because people were getting a Friday delivery,
too.  And he said no.  I don't have time.  I said Lou,
we've been friends for 25 or 30 years, I said you're
not even going to let me explain?

Grenier Dep. 96:4-97:6.  The reason Key Floral gave for

discharging Grenier was her violation of a Key Floral standard

of conduct under which it was a dischargeable offense to go

through the personal possessions of a co-worker.

    Based upon the forgoing, Grenier sued Key Floral in three

counts, asserting that Key Floral: (1) demoted her on account of

her age, in violation of 29 U.S.C. § 623(a)(1); (2) discharged

her on account of her age, in violation of 29 U.S.C. §

623(a)(1); and (3) discharged her because she opposed Key

Floral's age discrimination, in violation of 29 U.S.C. § 623(d).

## Discussion

    Key Floral moves for summary judgment on each of Grenier's

three claims.  In the discussion that follows, the court first

considers Grenier's two age-discrimination claims, one based
upon her demotion (Count I), the other based upon her discharge
(Count II).  Then, the court turns to Grenier's retaliation
claim (Count III), which is also based upon her discharge.

A. Age Discrimination (Counts I & II)

Under the ADEA, it is "unlawful for an employer . . . to
discharge any individual or otherwise discriminate against any
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's age."
29 U.S.C. § 623(a)(1).  "The employee bears the burden of
proving that [her] age was the but-for cause" of the employment
action she challenges.  Adamson v. Walgreens Co., 750 F.3d 73,
78 (1st Cir. 2014).

> "Where, as here, the employee lacks direct evidence,
> [courts] utilize the burden-shifting framework
> developed by the Supreme Court to facilitate the
> process of proving discrimination." Bonefont-
> Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 123
> (1st Cir. 2011) (citing McDonnell Douglas Corp. v.
> Green, 411 U.S. 792, 802–05 (1973)).
>
> The first step of this framework requires the
> employee to establish his prima facie case by
> producing evidence that shows: "(1) that [she] was at
> least forty years old [at the time of the employment
> action at issue]; (2) that [her] job performance met
> the employer's legitimate expectations; (3) that [she]
> suffered an adverse employment action such as a
> firing; and (4) that the employer filled the position,
> thereby showing a continuing need for the services
> that [she] had been rendering." Meléndez v.
> Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010).

Doing so gives rise to a rebuttable presumption of discrimination and shifts the burden of production — but not persuasion — "to the employer to articulate a legitimate, non-discriminatory reason for its decisions." Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009) (internal quotation marks omitted).  If the employer meets this burden, "the focus shifts back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (internal quotation mark omitted).  At the summary judgment stage, the plaintiff need not prove [her] case, but must proffer sufficient evidence to raise a genuine issue of material fact as to whether [she] was fired [or otherwise treated adversely] because of [her] age. See Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000).

Adamson, 750 F.3d at 78-79 (parallel citations omitted).

### 1. Demotion

Key Floral argues that Grenier cannot establish either the second or the third elements of a prima facie case of age discrimination based upon its assigning her to work as a helper rather than as a floral technician.  It further argues that even if Grenier could establish a prima facie case, she cannot demonstrate that Key Floral's explanation for its action was a pretext for age discrimination.  The court does not agree.

With regard to the second element of Grenier's prima facie case, Key Floral argues that her inability to keep her hours within the budget at Hudson demonstrates that her job

performance did not meet expectations.  That argument is foreclosed by Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 129, 139, (1st Cir. 2012), in which the court of appeals held that the district court cannot consider the employer's explanation for taking an employment action when determining whether the employee has established a prima facie case. Because the record includes uncontested evidence that Grenier was proficient at performing the duties of a floral technician, she has established the second element of her prima facie case.

So, too, has Grenier established the third element.  While Key Floral attempts to minimize the employment action it took on March 6, by calling it a transfer rather than a demotion, it is undisputed that while Grenier continued to be paid at the same hourly rate she received as a floral technician, her hours were effectively cut in half.  It is also undisputed that she was no longer a floral technician, in charge of managing a location, but was merely a helper, an assistant to a floral technician. At this stage, that is enough to establish an adverse employment action.

In sum, the court cannot agree that Grenier has failed to carry the light burden of establishing her prima facie case. Because Grenier concedes that Key Floral has carried its own light burden of articulating a legitimate non-discriminatory

reason for her new work assignment, the court turns to the third stage of the McDonnell Douglas framework.  In the analysis that follows, the court bears "in mind that [it] should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." Acevedo-Parrilla, 696 F.3d at 140 (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000); citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998)).

Key Floral argues that Grenier cannot establish that the reasons it gave for assigning her to work as a helper were pretextual, because: (1) the only evidence she has of ageism consists of stray comments; and (2) the person who made the decision to change her work assignment, Chaves, also made the decision to hire her, and did so when she was 55 years old. Those arguments present questions for the jury, not a basis for granting summary judgment.

With regard to Key Floral's stray-comments argument, the court notes that "'[i]t is settled that statements made by decisionmakers can evidence age discrimination.'" Acevedo-Parrilla, 696 F.3d at 143 (quoting Kelley v. Airborne Freight Corp., 140 F.3d 335, 347 (1st Cir. 1998)).  "Moreover, in evaluating such remarks made by a decisionmaker, [courts should]

consider[] their temporal proximity and causal connection to the [employment] decision." Id. at 144 (citing Meléndez, 622 F.3d at 54-55). Regarding the probative value of workplace remarks, the court of appeals has explained:

> Although statements directly related to the challenged employment action may be probative in the pretext inquiry, mere generalized "stray remarks," arguably probative of bias against a protected class, normally are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance.

Ortiz-Rivera v. Astra Zeneca LP, 363 F. App'x 45, 47-48 (1st Cir. 2010) (quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001)).

Based upon the distinction drawn in Straughn, Chaves's ageist comments can hardly be characterized as mere generalized stray remarks. They were made by the supervisor who demoted Grenier, at the meeting where he informed her of his decision. As evidence of discriminatory intent, the source and the timing of Chaves's ageist comments could not be more favorable to Grenier's claims.

That, however, is not quite the end of the story. In Acevedo-Parrilla, where the employee's supervisor told the employee, on two occasions, "that employees 'who had been in the company for a long time[] were not performing,'" 696 F.3d at 143, the court explained that it was "by no means suggesting

13

that these remarks, which are also susceptible to a benign interpretation are, on their own, sufficient to sustain [the plaintiff's] burden." Id. at 144 n.8.  The court went on to say:

> [W]e do find that they may be considered in conjunction with other evidence . . . to determine if the aggregate proof satisfies the plaintiff's burden on summary judgment to raise an issue of fact regarding discriminatory motive.  Cf. Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) (holding that stray remarks may be considered evidence of bias only in combination with other evidence and if they were temporally close and causally related to the adverse employment decision).

Id.  Like the plaintiff in Acevedo-Parrilla, Grenier has produced evidence of disparate treatment, see id. at 144-45, which "can provide evidence of discriminatory animus," id. at 144 (quoting Vélez, 585 F.3d at 451).  Specifically, she has produced evidence that floral technicians who were younger than her had exceeded their budgeted hours, some to a greater extent than she had, and that she was the only floral technician who had ever been demoted to a helper position on account of going over budget on work hours.  Key Floral's "stray-comments" argument is not persuasive.

Equally unpersuasive is Key Floral's reliance upon the same-actor theory.  In Proud v. Stone, 945 F.2d 796 (4th Cir. 1991), a case in which the age-discrimination plaintiff was hired and fired by the same person within a six-month span, the

court explained that "employers who knowingly hire workers within a protected group seldom will be credible targets for pretextual firing," id. at 798, because the fact that the same person hired and fired "creates a strong inference that the employer's stated reason for acting against the employee is not pretextual," id.  The First Circuit has recently explained its interpretation of that legal theory:

> [T]he so-called "same actor inference" states that "[i]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." LeBlanc [v. Great Am. Ins. Co.], 6 F.3d [836,] 847 [(1st Cir. 1993)] quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)).

Pina v. Children's Place, 740 F.3d 785, 796 (1st Cir. 2014). Here, the ten years between Grenier's hiring and her demotion is not the "relatively short time span" contemplated by the courts that have adopted the same-actor inference.

Because neither Key Floral's "stray-comment" argument nor its reliance upon the same-actor inference entitles it to judgment as a matter of law on Grenier's first age-discrimination claim, its motion for summary judgment, as to Count I, is denied.

### 2. Discharge

In Count II Grenier asserts a second age-discrimination claim, this one based upon her discharge.  Key Floral argues that Grenier cannot establish her prima facie case and that, even if she could, she cannot demonstrate that Key Floral's explanation for her discharge was a pretext for age discrimination.  The court does not agree.

Key Floral's only argument regarding Grenier's prima facie case is that an employee who has gone through another employee's personal effects cannot be considered to be meeting her employer's legitimate expectations.  But, as the court has already explained, such an argument is foreclosed by Acevedo-Parrilla, 696 F.3d at 139.  Because Grenier has established her prima facie case, and concedes that Key Floral has articulated a legitimate non-discriminatory reason for her discharge, pretext is again the determinative issue.

When assessing pretext, the court must focus on the perception of the decisionmaker, and whether he or she actually believed the reason given for the adverse employment action.  See Acevedo-Parrilla, 696 F.3d at 140-41 (citing Gray v. N.E. Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)).  To demonstrate pretext, a plaintiff must show both that the proffered "explanation is unworthy of credence," id. at 141

(quoting Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000); citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)), and "that the pretextual reasons were 'intended to cover up the employer's real motive: age discrimination,'" id. at 143 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)).

Turning to the first part of the pretext analysis, Grenier has produced undisputed evidence that would allow a reasonable jury to conclude that Key Floral's explanation for discharging her is not worthy of credence.  That evidence includes: (1) the haste with which Chaves made the decision to discharge an employee with whom he had a longstanding personal and professional relationship, and who, in his view, was proficient in all aspects of her work as a floral technician; (2) Chaves's refusal to give Grenier a chance to explain her side of the story, even after she told him that she had merely taken a piece of Key Floral paperwork out of Andrews's work bag while looking for an invoice; and (3) the lack of any meaningful investigation into what was clearly a complicated situation, given the multiple characterizations of the bag at issue (work bag versus personal bag), and the multiple characterizations of Grenier's actions ("going through" Andrews's bag versus removing a single, visible document from it).

Turning to the second part of the analysis, Grenier has also produced undisputed evidence from which a reasonable jury could conclude that Key Floral's explanation for discharging her was intended to cover discriminatory animus.  That evidence includes: (1) Chaves' ageist comments, which he made less than a month before he discharged Grenier and which betrayed a belief that older workers were not able keep up with younger ones, see Acevedo-Parrilla, 696 F.3d at 144 (holding that plaintiff established triable issue on "temporal proximity and causal connection" where employer's "remarks were made, at most, six months prior to [plaintiff's] termination, and expressed [decisionmaker's] displeasure at older employees' long tenure at the company"); and (2) Key Floral's disparate treatment of Grenier with respect to her demotion.  Chaves's ageist comments are, arguably, somewhat less strongly connected to his decision to discharge Grenier than they are to his decision to demote her.  Viewed in the light most favorable to Grenier, however, the record supports the inference that Chaves's discriminatory animus had not dissipated in the brief time between his comments and his decision to discharge Grenier.

Based upon the facts and the reasonable inferences that may be drawn therefrom, a rational jury could find that Chaves fired

Grenier because of her age.  Accordingly, as to Count II, Key Floral's motion for summary judgment is denied.

### B. Retaliation (Count III)

Under the ADEA, it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d).  As with Grenier's age-discrimination claims, the McDonnell Douglas burden-shifting framework applies.  See Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 26 (1st Cir. 2012).  Under that framework,

> succeeding on a claim of retaliation . . . entails proof that "(1) [the plaintiff] engaged in protected conduct under federal . . . law; (2) [she] suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action." McMillan v. Mass. SPCA, 140 F.3d 288, 309 (1st Cir. 1998).  In order to make a prima facie showing of these elements, it is not necessary that the plaintiff succeed on the underlying claim of discrimination; "[i]t is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred; that [she] acted on it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).

> Once the plaintiff makes [her] prima facie showing, the burden shifts to the defendant to produce evidence of a "legitimate, non-retaliatory reason" for the adverse employment action. McMillan, 140 F.3d at 309.  If the defendant produces such evidence, the burden reverts to the plaintiff to prove that "the real reason for the decision" was retaliatory. Id.

Trainor, 699 F.3d at 26.

Key Floral argues that Grenier cannot establish the second or third elements of her prima facie case that she was discharged in retaliation for opposing age discrimination.  It further argues that even if Grenier can establish her prima facie case, she cannot show that the reason it gave for discharging her was pretextual.  Key Floral is mistaken.

With regard to the second element of the prima facie case, i.e., an adverse employment action, Key Floral relies upon the undisputed fact that Sousa did not explicitly discipline Grenier for discussing company business in front of outsiders.  But that fact has no bearing on whether some subsequent adverse employment action was taken for the purpose of retaliating against Grenier for opposing Key Floral's age discrimination in her conversation with Andrews.

Key Floral's argument with regard to the third element, i.e., a causal connection between her protected activity and her discharge, is no more persuasive.  Less than a month passed between Grenier's protected activity and her discharge, and, based upon Sousa's March 20 memorandum, defendant does not dispute that less than two weeks passed between Chaves's learning of Grenier's conversation with Andrews and Grenier's

discharge.[1]  Either span falls comfortably within the range of time spans the First Circuit has found sufficient to satisfy the causation element of a prima facie retaliation case.  See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) ("We conclude that the 'temporal proximity' between appellant's allegations of discrimination in June 2002 and his termination in August 2002 is sufficient to meet the relatively light burden of establishing a prima facie case of retaliation.") (quoting Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006)).

    Turning to pretext, the court has already described the undisputed evidence that would allow a reasonable jury to conclude that Key Floral's explanation for discharging Grenier is unworthy of credence.  The summary-judgment record also includes evidence from which a reasonable jury could infer that Key Floral's explanation was intended to cover up retaliatory animus.  As evidenced by Sousa's March 20 memorandum, Key Floral's concerns over Grenier's conversation with Andrews

---

[1] Grenier has submitted an affidavit in which she says that the meeting described in Sousa's memorandum did not occur, see Pl.'s Mem. of Law, Ex. 10 (doc. no. 32-11) ¶ 10, and argues that Sousa's memorandum may have been fabricated.  Whether or not the meeting actually took place, and regardless of the authenticity and/or accuracy of the memorandum, the existence of that memorandum establishes a critical factual link in the causal chain: At the time he discharged Grenier, Chaves knew about her complaint to Andrews that Key Floral had discriminated against her because of her age.

remained alive long after Sousa spoke with Grenier about it on March 6.

Based upon the facts and the reasonable inferences drawn therefrom, a rational jury could find that Chaves fired Grenier in retaliation for opposing Key Floral's age discrimination. Accordingly, as to Count III, Key Floral's motion for summary judgment is denied.

### Conclusion

For the reasons detailed above, defendant's motion for summary judgment, document no. 10, is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


July 10, 2014

cc:   Debra Weiss Ford, Esq.
      Ellen Purcell, Esq.
      K. Joshua Scott, Esq.
      Martha Van Oot, Esq.